# In the

# United States Court of Appeals

## For the Second Circuit

AUGUST TERM, 2017

SUBMITTED: JANUARY 24, 2018
DECIDED: APRIL 4, 2018

17-1881-cv

LATIFA JAFFER, AHMED M. HIRJI,
SHEHZAD HIRJI, AND HUSSEIN JAFFER,

*Plaintiffs-Counter-Defendants-
Appellants*,

v.

NAUSHAD M. HIRJI AND SABIRA HIRJI,

*Defendants-Counter-Claimants-
Appellees.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 14-CV-2127 – Kenneth M. Karas, *District Judge.*

————

Before:     Leval, Calabresi, Cabranes, *Circuit Judges.*

————

1

Plaintiffs-Counter-Defendants-Appellants, Latifa Jaffer, Ahmed M. Hirji, Shehzad Hirji, and Hussein Jaffer appeal from the May 18, 2017 judgment of the United States District Court for the Southern District of New York (Karas, *J.*) granting summary judgment in favor of Defendants-Counter-Claimants-Appellees. We vacate and remand that judgment.

Judge Cabranes dissents in a separate opinion.

Costantino Fragale, Esq., Maker, Fragale & Di Costanzo, LLP, Rye, NY, *for Plaintiffs-Counter-Defendants-Appellants*

Andrew D. Brodnick, Esq., Rye Brook, NY, *for Defendants-Counter-Claimants-Appellees*

CALABRESI, Circuit Judge:

Plaintiffs-Counter-Defendants-Appellants Latifa Jaffer, Ahmed M. Hirji, Shehzad Hirji, and Hussein Jaffer (jointly, "Plaintiffs") appeal from the October 27, 2015 order and May 18, 2017 judgment of the District Court in favor of Defendants-Counter-Claimants-Appellees Naushad M. Hirji and Sabira Hirji (jointly, "Defendants"). Plaintiffs argue that the District Court erred by granting judgment on the pleadings against their adverse possession claim and by granting summary judgment in favor of Defendants on Plaintiffs' constructive trust claim. Upon review, we agree with the District Court with respect to the adverse possession claim and affirm that ruling. With regard to the constructive trust claim, we disagree with the District Court and vacate and remand that ruling. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

## BACKGROUND

This case involves an intra-family dispute over who owns a residential house in Hartsdale, New York ("the Property"). In 1982, the now-deceased Mohamed Hirji ("Mohamed") purchased the Property, and put the title in the names of two of his sons: Plaintiff Ahmed Hirji ("Ahmed") and non-party Mustafa Hirji. According to the attorney who represented Mohamed at the purchase, Mohamed intended the Property to be "a place that the family could reside in." App. at 58.

In 1989, Plaintiff Ahmed and Mustafa transferred the title to their father Mohamed and their brother, Defendant Naushad Hirji ("Naushad"), as joint tenants with the right of survivorship. Mohamed and Defendant Naushad paid no consideration. Mohamed died in 1998, and his interest in the Property devolved to Defendant Naushad. In 2001, Defendant Naushad deeded the Property to himself and his wife, Defendant Sabira Hirji. Defendants currently possess title to the Property, but live in Tanzania. Defendant Naushad testified that he never spoke to the attorney who prepared the deeds in 1989 and 2001. During this whole period, Defendant Naushad visited the Property only once and never hired anyone to inspect it.

Plaintiffs Ahmed, Shehzad Hirji (son of Ahmed), Latifa Jaffer (daughter of Mohamed, sister of Ahmed), and Hussein Jaffer (husband of Latifa) now reside at the Property, where they all (except Shehzad) have lived since 1984. Between 1984 and

3

2013, Plaintiffs maintained and made capital improvements on the Property, paid all subject property taxes, and never remitted rent payments to Defendants.

In January 2014, Defendants issued a Notice of Termination to Plaintiffs requiring them to vacate the Property on or before February 28, 2014. Three days before they were required to vacate, Plaintiffs commenced the instant litigation. In their amended complaint, Plaintiffs claimed that (1) Defendant Naushad holds the legal title to the Property in constructive trust for the benefit of the Plaintiffs, and (2) Plaintiffs acquired title to the Property by adverse possession.

The District Court granted judgment on the pleadings against the adverse possession claim under Federal Rule of Civil Procedure 12(c). The District Court subsequently granted summary judgment to Defendants on the remaining constructive trust claim. This appeal followed.

**DISCUSSION**

We review *de novo* the award of summary judgment, "constru[ing] the evidence in the light most favorable to the [nonmoving party]" and "drawing all reasonable inferences and resolving all ambiguities in [its] favor." *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017) (internal quotation marks omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact."

4

*CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and alteration omitted). But where "the burden of proof at trial would fall on the nonmoving party," the moving party can shift the initial burden by "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

We also review *de novo* the grant of a motion for judgment on the pleadings, "accept[ing] all factual allegations in the complaint as true and draw[ing] all reasonable inferences in plaintiffs' favor." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks and alteration omitted). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On both substantive claims we apply New York law. *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).

*Constructive Trust Claim.* The District Court improperly granted summary judgment to Defendants on the constructive trust claim.

"A constructive trust is an equitable remedy and its purpose is to prevent unjust enrichment." *Henning v. Henning*, 962 N.Y.S.2d 189, 192 (N.Y. App. Div. 2013). Under New York law, "a constructive trust is only imposed upon a finding of '(1) a

confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment.'" *Consumers Union of U.S., Inc. v. State*, 840 N.E.2d 68, 78 n.14 (N.Y. 2005) (quoting *Bankers Sec. Life Ins. Soc'y v. Shakerdge*, 406 N.E.2d 440, 440 (N.Y. 1980)). The parties do not debate that the facts satisfy the first prong of the test. Instead, the case turns primarily on the second factor, on which, given the alleged facts, the third and fourth prong depend.

"Even without an express promise, however, courts of equity have imposed a constructive trust upon property transferred in reliance upon a confidential relationship." *Sharp v. Kosmalski*, 351 N.E.2d 721, 723 (N.Y. 1976). In *Sharp*, and also in *Sinclair v. Purdy*, 139 N.E. 255 (N.Y. 1923), the New York Court of Appeals found that a constructive trust existed in favor of a party who transferred property to another in reliance upon a confidential relationship. In both cases, it did so in the absence of any express promise.

In the first case, *Sharp*, the Court of Appeals found a constructive trust to exist for a farmer who transferred his farm and home to a woman he hoped to marry. It did so because "it is inconceivable that plaintiff would convey all of his interest in property which was not only his abode but the very means of his livelihood without at least tacit consent upon the part of the defendant that she would permit him to continue to live on and operate the farm." 351 N.E.2d at 724.

In the second case, *Sinclair*, the Court of Appeals did the same for a state court clerk who transferred his interest in a property to his sister allegedly because he thought that limiting his assets would discourage criminal defendants from asking him to post bail for them. 139 N.E. at 255. The Court of Appeals found the trust because "[h]ere was a man transferring to his sister the only property he had in the world . . . in reliance upon her honor" and because "[e]ven if we were to accept her statement that there was no distinct promise to hold it for his benefit, the exaction of such a promise, in view of the relation, might well have seemed to be superfluous." *Id.* at 258.

Here, although, as the District Court found, no express promise was made, a genuine dispute of material fact may exist as to whether Ahmed transferred the Property to Naushad "in reliance upon a confidential relationship," *Sharp*, 351 N.E.2d at 723, as that term is defined by *Sharp* and *Sinclair*. Ahmed testified that he conceived of the Property as a family home that all could occupy indefinitely and that transferring the deed from one family member to another would not change this. As he explained, "To me, it was like -- we don't believe in deeds. So, to me, it was like a family house . . . . Like, I never used to care, oh, it's under whose name. We didn't care. We didn't care about that. I know it's a family house." App. at 77. A number of undisputed facts may support Ahmed's characterization of his and his family's views of the Property's ownership: Plaintiffs lived rent-free for almost thirty years, made capital improvements to the Property, paid taxes on the Property, received Naushad as a visitor only once

7

during this period, and changed the names on the Property's deed multiple times without Naushad discussing these changes with the real estate lawyer who prepared the deeds. To the extent that Defendants question the existence of this practice and expectation, there may be a genuine dispute of material fact as to whether an implied promise was made and as to whether Defendants' refusal to honor this promise unjustly enriched them.

The District Court did not consider *Sinclair*. It cited *Sharp* and acknowledged the legal significance of implied promises: "New York courts have long held that while a promise is essential [to the creation of a constructive trust], it need not be expressly made, for active co-operation or silent acquiescence may have the same effect as an express promise." *Jaffer v. Hirji*, No. 14-CV-2127 (KMK), 2017 WL 1169665, at *11 (S.D.N.Y. Mar. 28, 2017) (internal quotation marks omitted). It did not, however, compare the relationship and the transaction in *Sharp* to the relationship and transaction alleged here. Instead, it rested its conclusion on what Naushad believed, a factor not discussed by *Sharp*. As a result, we cannot say that the District Court correctly determined whether Ahmed transferred the Property to Naushad "in reliance upon a confidential relationship," *Sharp*, 351 N.E.2d at 723, as that term is defined by *Sharp* and *Sinclair*. We, therefore, remand to the District Court for it to make such a determination.

Defendants' major counterargument gives us little pause. In their brief, they contend that "Appellants predicate their claim on the allegation that the Home was

8

intended for the benefit of [Mohammed Hirji's] children and therefore the promise to honor that objective . . . could be implied." Appellees' Br. at 13. They then explain that New York courts find constructive trusts to rectify fraud, not simply to enforce intentions.

It is correct that New York law requires something beyond "intentions" if a constructive trust is to be imposed. *See Binenfeld v. Binenfeld*, 537 N.Y.S.2d 41, 42 (N.Y. App. Div. 1989) (observing that "[a]lthough the facts may reveal a case of unrealized expectations, we may not, without more, fashion a constructive trust" and adding that constructive trusts are "fraud-rectifying remed[ies]"). But Defendants mischaracterize Plaintiffs' case in this appeal. Plaintiffs' claim to a constructive trust turns on considerably more than Mohammed Hirji's intentions. It rests on the claims that Ahmed possessed an interest in the Property and deeded it to Naushad because he assumed, based on his relationship to Naushad, that Naushad would allow him and his family to live there indefinitely. Portraying Plaintiffs' case as depending entirely on Mohammed Hirji's intentions misses the case's key facts. Defendants' argument is, therefore, unavailing.[1]

_____

[1] If, on remand, the District Court finds that Ahmed transferred the Property to Naushad "in reliance upon a confidential relationship," *Sharp*, 351 N.E.2d at 723, as that term is defined by *Sharp* and *Sinclair*, and hence that this case involves more than merely unrealized expectations, but concludes that the transfer lacked any element that might require a "fraud-rectifying remedy," Judge Calabresi believes that certification to the New York Court of Appeals may, at that stage, be appropriate to resolve the tension

Defendants make arguments based on the New York Dead Man's Statute and judicial estoppel. The District Court rejected these arguments and so do we for the reasons given by that court.

*Adverse Possession Claim.* We also conclude that the District Court properly granted Defendants' motion for judgment on the pleadings with respect to Plaintiffs' adverse possession claim.

To establish a claim of adverse possession, one must show that the occupation of a property is "(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period" of 10 years. *Walling v. Przybylo*, 851 N.E.2d 1167, 1169 (N.Y. 2006). While New York courts typically presume hostility where the other elements are satisfied, this presumption does not apply where "there is a close and cooperative relationship between the record owner and the person claiming title through adverse possession . . . ." *Estate of Becker v. Murtagh*, 968 N.E.2d 433, 438 (N.Y. 2012). In such circumstances, the "party asserting the adverse possession claim must come forward with affirmative facts to establish that the use of the property was under a claim of right and adverse to the interests of the true owners." *Id.* (internal quotation marks and alterations omitted).

---

between the language of the New York Court of Appeals in *Sharp* and *Sinclair* and that of the Appellate Division in *Binenfeld*.

10

Plaintiffs pled that Ahmed conveyed title to his brother, Defendant Naushad, in 1989. In such circumstances, "permission can be implied from the beginning, [and] adverse possession will not arise until there is a distinct assertion of a right hostile to the owner." *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 596 N.Y.S.2d 435, 437 (N.Y. App. Div. 1993). The amended complaint does not contain any affirmative facts that Plaintiffs did anything that constituted "a distinct assertion of a right hostile to" Defendants. Accordingly, the District Court appropriately granted Defendants' motion on the adverse possession claim.

*Sanctions.* Finally, Defendants ask this Court to impose sanctions against Plaintiffs because this appeal was made "solely for the purpose of 'needlessly increas[ing] the cost of litigation.'" Appellees' Br. at 15 n.3 (quoting Fed. R. Civ. P. 11(b)(1)). We decline to do so. Plaintiffs prevail in their appeal of the constructive trust claim; their arguments are anything but frivolous.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the October 27, 2015 order of the District Court and **VACATE AND REMAND** the May 18, 2017 judgment of the District Court.

11

JOSÉ A. CABRANES, *Circuit Judge*, dissenting:

The New York Court of Appeals may one day decide to transform the constructive trust doctrine into an intent-enforcing remedy. But because it has not yet done so, I respectfully dissent.

According to the New York Court of Appeals, "the constructive trust doctrine serves as a 'fraud-rectifying' remedy rather than an 'intent-enforcing' one." *Bankers Sec. Life Ins. Soc'y v. Shakerdge*, 406 N.E.2d 440, 441 (N.Y. 1980); *see also Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 216 (2d Cir. 2004) ("New York law is clear that a constructive trust is an equitable remedy intended to be 'fraud-rectifying' rather than 'intent-enforcing.'"); *Binenfeld v. Binenfeld*, 537 N.Y.S.2d 41, 42 (N.Y. App. Div. 1989) ("Courts have uniformly held that a constructive trust is a fraud-rectifying remedy rather than an intent-enforcing one." (internal quotation marks omitted)). Neither appellants nor the majority, however, identify any fact that creates a genuine dispute about whether appellees committed fraud. At most, appellants and the majority establish that there is a genuine dispute about appellant Ahmed's subjective expectations when he conveyed title to appellee Naushad. Expectations are not enough to impose a constructive trust under New York law. *See Binenfeld*, 537 N.Y.S.2d at 42. ("Although the facts may reveal a case of unrealized expectations, we may not, without more, fashion a constructive trust." (internal quotation marks omitted)).